IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

UNITED STATES OF AMERICA,

v.

ELTON AUGUSTIN,

Defendant.

CRIMINAL CASE NO.
1:11-CR-41-AT-LTW

## MAGISTRATE JUDGE'S FINAL REPORT AND RECOMMENDATION AND ORDER CERTIFYING CASE READY FOR TRIAL

Pending before this Court is Defendant Elton Augustin's Motions to Suppress Statements.[1]  Docket Entries [12, 21].  The Government has filed a response in opposition to Defendant's Motions to Suppress Statements.  Docket Entry [24]. This Court held an evidentiary hearing on Defendant's Motions to Suppress on April 21, 2011.  Docket Entry [17]. Having considered Defendant's motions, the parties' briefs, and all supporting documents submitted, and for the reasons set forth below, this Court **RECOMMENDS** that Defendant's Motions to Suppress be **DENIED**.  Docket Entries [12, 21].

---

[1]The Court notes that Defendant filed two motions seeking suppression of his statements. Docket Entries [12, 21]. Although these motions are docketed as separate motions, the second motion is merely a particularized version of the first motion.

## **DEFENDANT'S MOTIONS TO SUPPRESS**

### I.   **FACTUAL BACKGROUND**

On August 3, 2010, Special Agent James P. Hosty of the Federal Bureau of Investigation's Law Enforcement Corruption Squad and Special Agent Todd A. Goodson were investigating Defendant Elton Augustin (hereinafter "Defendant"), an officer with the Atlanta Police Department since approximately 2006, on suspicion that Defendant may have worked at an illegal nightclub and possibly accepted bribes from the nightclub. (Transcript of April 22, 2011 Evidentiary Hearing, Docket Entry [17], hereinafter "Tr.," 5, 35). The Special Agents arrived at Defendant's home in the afternoon, between 2:00 and 4:00 p.m., without previously having contacted Defendant to let him know they were coming. (4-5, 12-13). The Special Agents, in suits and ties and carrying concealed firearms, knocked on the door and asked a female who answered if they could speak to Defendant. (Tr. 5-7, 37, 42). Defendant, dressed in shorts or boxer shorts, came to the door and directed the Special Agents to a downstairs room. (Tr. 6, 24, 43). Defendant neither asked if he could put on additional clothes, nor put on more clothes during his interaction with the Special Agents. (Tr. 14). Although Defendant appeared to be sleepy, he did not appear to be under the influence of alcohol or drugs and he appeared to understand English. (Tr. 6, 24, 44).

After about five minutes, Defendant stated that he needed to go to the bathroom and that he would leave the door open if the Special Agents wanted him to do so. (Tr. 14-15, 46). Agent Hosty told Defendant that would be fine. (Tr. 15). Both Special Agents stood when Defendant left to go to the bathroom and Special Agent Hosty testified that he could see the side of Defendant's body while he was in the bathroom. (Tr. 15).

During Defendant's interview, the Special Agents repeatedly asked Defendant whether he worked at the nightclub or had received money from the nightclub, and Defendant replied that he had not. (Tr. 17-18, 49). After Defendant said that he did not work at the club or receive money from the club, the Special Agents advised Defendant that making a false statement to an agent of the Federal Bureau of Investigation was a violation of federal law and that he could be indicted for making false statements. (Tr. 23).

Shortly thereafter, the Special Agents ended the interview when Defendant requested to speak to an attorney before answering any other questions. (Tr. 8, 49-50). At that time, the Special Agents provided Defendant with a business card and told him to contact them with his lawyer if he wished to make a further statement. (Tr. 8). As the Special Agents were getting up to leave, Defendant asked them to wait and to come

3

back. (Tr. 22). The Special Agents paused for a moment, but Defendant did not have anything else to say, so they left. (Tr. 22).

The Special Agents did not threaten Defendant, physically restrain him, touch him, restrict his movement in any way, handcuff him, or make any promises to him in order to induce him to speak with them during the interview. (Tr. 6-724-25). The Special Agents tone of voice was conversational when they spoke with Defendant. (Tr. 7). The Special Agents did not tell Defendant he was under arrest or that he could not leave his house. (Tr. 7). The Special Agents also did not tell Defendant that he was free to leave his house. (Tr. 19). Additionally, the Special Agents did not tell Defendant that he did not have to talk to them and did not advise him of his <u>Miranda</u> rights. (Tr. 13). The interview lasted no more than 15 minutes. (Tr. 6).

On February 8, 2011, a federal grand jury sitting in the Northern District of Georgia returned a single count indictment against Defendant, charging him with knowingly and willfully making a materially false, fictitious, and fraudulent statement and representation to Special Agents of the Federal Bureau of Investigation in violation of 18 U.S.C. § 1001. Docket Entry [1]. Defendant now seeks to suppress his statements that he did not work at a nightclub or receive money from the club. (Tr. 17-18, 41, 51).

4

## II.   **LEGAL ANALYSIS**

Defendant argues that his statements to the Special Agents should be suppressed because he was in custody at the time of the interrogation and no one read him his Miranda warnings.  Defendant contends that he was in the Special Agent's custody because under the circumstances a reasonable person standing in his shoes would not feel free to leave.  In support, Defendant asserts that the Special agents did not call ahead to make arrangements to speak with him, they did not ask him for his permission to ask questions, they never told him that he could leave or that they would leave if he wanted them to do so, they never told him that he was not under arrest, and they monitored Defendant's movements even when he went to the bathroom.   The Government argues in response that Defendant was not in custody because the interview occurred at Defendant's home and neither Special Agent brandished a weapon, physically restrained Defendant in any way, or told Defendant that he was under arrest. Additionally, the Government asserts that the tone of the interview was cordial and laid back.

This Court finds no violation of Defendant's rights. The Special Agents were not required to give Defendant Miranda warnings because Defendant was not in custody. The Fifth Amendment of the United States Constitution prohibits the use of an

5

involuntary confession against a defendant in a federal criminal trial. U.S. Const. amend. V; Dickerson v. United States, 530 U.S. 428, 433 (2000); Bram v. United States, 168 U.S. 532, 542 (1897). "To determine whether a confession is voluntary, the court must assess 'the totality of all the surrounding circumstances—both the characteristics of the accused and the details of the interrogation.'" Waldrop v. Jones, 77 F.3d 1308, 1316 (11th Cir. 1996) (quoting Schneckloth v. Bustamonte, 412 U.S. 218, 226 (1973)). The totality of the circumstances test to determine voluntariness of a confession turns primarily on the presence of "police overreaching," and relevant factors include the "accused's lack of education, or his low intelligence, the lack of any advice to the accused of his constitutional rights, the length of detention, the repeated and prolonged nature of the questioning, and the use of physical punishment such as the deprivation of food or sleep." Id. (internal citations omitted). In Miranda v. Arizona, 384 U.S. 436 (1966), the Supreme Court recognized the need to further safeguard the privilege against self-incrimination by requiring that Miranda warnings, or other fully effective means, be given to subjects of custodial interrogations. Miranda, 384 U.S. at 478-79; see also Dickerson, 530 U.S. at 442-43 (rejecting Congress's attempt through 18 U.S.C. § 3501 to reinstate the totality test as sufficient). The right to Miranda warnings, however, does not attach until the initiation of a custodial interrogation. United States v. Acosta, 363

F.3d 1141, 1148 (11th Cir. 2004); see also United States v. Grimes, 142 F.3d 1342, 1348-49 (11th Cir. 1998) (applying Miranda only if defendant was both (a) in custody and (b) being interrogated at the time the statements were made).

A defendant is in custody for purposes of Miranda when there has been a "formal arrest or restraint on freedom of movement of the degree associated with a formal arrest." United States v. Brown, 441 F.3d 1330, 1347 (11th Cir. 2006) (quoting California v. Beheler, 463 U.S. 1121, 1125 (1983) (internal quotation marks omitted)). Using an objective test, a court will find a defendant in custody if "under the totality of the circumstances, a reasonable man in his position would feel a restraint on his freedom of movement . . . to such extent that he would not feel free to leave." United States v. McDowell, 250 F.3d 1354, 1362 (11th Cir. 2001). The actual, subjective beliefs of the defendant and interviewing officer are irrelevant to this inquiry, id., and the objective test presupposes a reasonable innocent person. United States v. Moya, 74 F.3d 1117, 1119 (11th Cir. 1996). Factors to be considered include the location of the interview and whether "the officers brandished weapons, touched the suspect, or used language or a tone that indicated that compliance with the officers could be compelled." United States v. Street, 472 F.3d 1298, 1309 (11th Cir. 2006); Brown, 447 F.3d at 1348.

In this case, several factors weigh heavily in favor of a finding that Defendant was

not in the Special Agents' custody. The Special Agents did not formally place Defendant under arrest, touch him, physically restrain him, or otherwise compel Defendant to make a statement. The tone of the interview was conversational, the interview was short, and the Special Agents never told Defendant that he was under arrest or that he was not free to leave. The fact that Special Agent Hosty observed Defendant while Defendant was in the restroom does not transform the situation into a custodial interrogation. Defendant offered to leave the bathroom door open and the fact that the officers may have accepted Defendant's offer for safety purposes does not give rise to a reasonable inference that Defendant was not free to either leave or request that the Special Agents leave. United States v. Opoku, 210 F. App'x 848, 850 (11th Cir. 2006) (concluding that Defendant was not in custody even though agents supervised him as he moved throughout his house). Moreover, the fact that the interview occurred in Defendant's home militates against a finding that Defendant was in custody because the Defendant's home is a familiar, neutral surrounding for Defendant. Brown, 441 F.3d at 1348 (finding that the fact that interrogation occurred at the defendant's girlfriend's home weighed in favor of a finding that the defendant was not in custody). Accordingly, this Court concludes that Defendant was not in custody when he made statements to the officers. See, e.g., United States v. Gomes, 279 F. App'x 861, 869

Case 1:11-cr-00041-AT-LTW   Document 26   Filed 08/19/11   Page 9 of 10


(11th Cir. 2008) (holding that defendant who was interviewed outside of a locked fence, was not physically restrained in any way, and was not told that he was under arrest, was not in custody even though officer told him that he would contact a probation officer who defendant feared would have him arrested); Opoku, 210 F. App'x at 851-52 (holding that Defendant who freely moved about his house albeit under supervision of agents, was not in custody of agents who did not handcuff him, brandish weapons, or make promises or threats) United States v. Saric, No. 8:06-cr-488-T-23MSS, 2007 WL 2264626, at *2-3 (M.D. Fla. Aug. 6, 2007) (finding that defendant who was not physically restrained, or forced to permit agents to enter his home was not in custody despite his argument that the agent raised his voice twice and brandished his weapon during the interview).  Because Defendant was not in custody, the Special Agents were not required to give Defendant Miranda warnings.  Accordingly, Defendant's Motion to Suppress Statements should be **DENIED**.

## CONCLUSION

For the foregoing reasons, the undersigned **RECOMMENDS** that Defendant's Motions to Suppress Statements be **DENIED**.  Docket Entries [12, 21].  There are no further motions or problems pending before the undersigned to prevent the scheduling

of this case for trial.  Therefore, this action is **CERTIFIED READY FOR TRIAL**.

**SO ORDERED, REPORTED AND RECOMMENDED** this 19 day of August,

2011.

LINDA T. WALKER
UNITED STATES MAGISTRATE JUDGE